UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds,<br><br>    Plaintiffs,<br><br>    v.<br><br>PAVEMENT MAINTENANCE, INC. an Illinois Corporation, and JOSEPH T. HAUGHEY, individually,<br><br>    Defendants,<br><br>and<br><br>MAT LEASING, INC.,<br>    Third Party Citation Respondents. | No. 02 C 5603<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity have filed a motion seeking the turnover of assets by Third-Party Citation Respondent MAT Leasing, Inc. Both Plaintiffs and MAT Leasing submitted briefs on the motion and participated in a hearing on September 7, 2005, during which I heard testimony from a witness from MAT Leasing, Inc. and a witness from Pavement Maintenance, Inc. In light of the evidence, I adopt the following findings of fact and conclusions of law.

*Findings of Fact*

MB Financial Bank, N.A., formerly known as Manufacturers' Bank (the "Bank"), is a commercial bank which maintains branch offices throughout the Chicago metropolitan area. Defendant Pavement Maintenance, Inc. ("PMI") is an Illinois corporation that is no longer in good standing with the Illinois Secretary of State. On April 18, 2001, the Bank extended credit to PMI in the principal sum of $400,000 (the "indebtedness"). To evidence the indebtedness, PMI executed and delivered a document to the Bank entitled "Business Loan Agreement (Asset Based)." To secure repayment of the indebtedness, PMI executed and delivered documents to the Bank entitled "Commercial Pledge Agreement" and "Commercial Security Agreement" (collectively, the "Security Documents"). Pursuant to the Security Documents, PMI granted a security interest to the Bank in, among other things, all of its inventory, chattel paper, accounts, equipment and general intangibles (the "Collateral"). On August 1, 2001, the Bank perfected its security interest in the Collateral by causing a UCC-1 financing statement to be filed with the Illinois Secretary of State.

On November 6, 2003, a judgment was entered in the above-captioned lawsuit in favor of Plaintiffs and against PMI in the amount of $59,975.47. No portion of this judgment has been satisfied. On May 19, 2004, I entered an agreed order declaring that the Bank has a "first and prior lien on the assets, including the accounts receivable of defendant, Pavement Maintenance, Inc." and that any recovery obtained pursuant to supplementary proceedings commenced in the above-titled lawsuit "shall be applied first to the indebtedness due to [the Bank] and then to the indebtedness due [Plaintiffs]." As of May 24, 2005, the unpaid principal balance of the indebtedness ($234,312.71) and accrued interest thereupon ($46,575.80) was $280,888.51.

Third-Party Citation Respondent MAT Leasing, Inc. ("MAT Leasing") is an Illinois corporation engaged in construction work in the Chicago area and is in good standing with the Illinois Secretary of State. Michael Tadin, Sr. owns 100% of the shares of MAT Leasing. M.T. Transit, Inc. ("MT Transit") is an Illinois corporation in good standing with the Illinois Secretary of State. Michael Tadin, Sr. and Michael Tadin, Jr. each own 50% of the outstanding shares of MT Transit. MAT Leasing and MT Transit are separate companies which maintain separate bank accounts.

Between April 30, 2001 and December 3, 2002, MAT Leasing subcontracted to PMI certain asphalt-related roadway materials and construction services. PMI provided materials and services to MAT Leasing pursuant to oral "handshake" agreements. In order to perform services for MAT Leasing, PMI purchased trucking (hauling) services from MT Transit during the same period of 2001 and 2002.

After providing the asphalt materials and services, PMI sent invoices to MAT Leasing. Between July 19, 2001 and November 30, 2002, PMI received from MAT Leasing payments in partial satisfaction of the amounts due. MAT Leasing remains indebted to PMI for the materials and services for an amount totaling $293,717.40. This total includes $236,007.40 in previously disclosed unpaid invoices, and a newly-discovered invoice totaling $57,710.00.

MAT Leasing seeks to reduce the amount owed by $126,280.39 (the "invoice adjustment") claiming that Michael Tadin, Jr. entered into an oral agreement with former PMI executive Joseph Haughey to adjust downward 28 of PMI's invoices. MAT Leasing further seeks to reduce the amount owed PMI by $67,523.30 (the "M.T. Transit check adjustment"), which is the sum of three checks issued by MAT Leasing to MT Transit on behalf of PMI

between August and November, 2002. MAT Leasing further seeks to reduce the amount owed PMI by $112,147.05 (the "M.T. Transit credit memo adjustment") to reflect a series of credit memos from MAT Leasing to MT Transit on behalf of PMI. Finally, MAT Leasing seeks to reduce the amount owed PMI by $30,000 (the "T&B adjustment") to reflect two checks issued to PMI by T&B Limited and T&B Limited Partnership at the direction of Michael Tadin, Sr.

***Conclusions of Law & Further Findings of Fact***

Pursuant to *Fed. R. Civ. P. 69(a)*, Illinois law governs actions by judgment creditors to recover funds owed by a third party to the judgment debtor. *See Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 939 F. Supp. 611, 615 (N.D. Ill. 1996), *aff'd in part and vacated in part on other grounds*, 118 F.3d 1157 (7th Cir. 1997). Under Illinois law, 735 ILCS 5/2-1402(b)(3), I am empowered to compel a third party indebted to the judgment debtor to deliver up assets so discovered or the value thereof if those assets are held under circumstances in which the judgment debtor could recover them in an appropriate action. *See Bentley v. Glenn Shipley Enters.*, 619 N.E.2d 816, 819 (Ill. App. Ct. 1993).

Plaintiffs have asked me to enter an order compelling MAT Leasing to deliver immediately the unpaid balance due from MAT Leasing to PMI for the asphalt materials and services for the benefit of Plaintiffs and MB Financial, or alternatively, to enter judgment in Plaintiffs' favor against MAT Leasing for this sum. MAT Leasing opposes Plaintiffs' motion because it "used property of [PMI] to pay [MT Transit's] bills with [PMI's] full consent" until MAT Leasing was no longer indebted to PMI. This claim is based principally on the testimony of Michael A. Tadin, Jr., who testified that MT Transit offset sums it owed by PMI by "reducing moneys that MAT Leasing owed to PMI."

4

I find that MAT Leasing is not entitled to the $126,280.39 invoice adjustment. No documentation of the adjustment exists aside from a spreadsheet, prepared by MAT Leasing in response to this litigation, noting the alleged, agreed-to adjustments. Furthermore, many of the original invoices, copies of which were provided by PMI, are marked "paid" and do not show any reduction in the amount owed. I do not attach too much weight to this evidence, as MAT Leasing's payments did not correspond precisely to specific invoices but were made in lump sums. Nevertheless, there is no credible evidence that PMI agreed to any reduction of the value of these invoices.

MAT Leasing also claims to have offset its debt to PMI by making payments to MT Transit on behalf of PMI via check (the MT Transit check adjustment) and internal memo transfers (the MT Transit credit memo adjustment). I do not find that MAT Leasing was entitled to, or did, offset its indebtedness to PMI in this manner. Though Michael Tadin, Jr. owned an interest in both companies, MAT Leasing and MT Transit are separate corporations. The right to setoff, which requires mutuality, was not proved by MAT Leasing. Further, MAT Leasing's indebtedness to PMI was subject to the Bank's duly perfected security interest in PMI's collateral, which included its accounts receivable.

However, PMI accepted and accounted for one of the MT Transit check adjustments, a check in the amount of $16,453.65 and dated August 27, 2002. I find that the two other checks from MAT Leasing to MT Transit, dated August 1, 2002 and November 13, 2002 and totaling $51,069.65, were so closely related in time and nature to the accounted-for check that I infer that PMI's failure to account for these payments was an error or oversight and that the payment was

5

authorized by at least one of PMI's executives. Therefore I will adjust MAT Leasing's indebtedness by $51,069.65.

MAT Leasing nonetheless failed to establish that it was entitled to setoff sums owed to PMI through a series of internal credit memos to MT Transit. For this reason I will not grant the requested offset of $112,147.05. There is simply insufficient evidence that PMI agreed to these offsets or this manner of offset, and the claimed offsets were subject to the Bank's duly perfected security interest.

Finally, I find that MAT Leasing is not entitled to adjust the sum owed PMI for two checks, totaling $30,000, issued by T&B Limited and T&B Limited Partnership and made payable to PMI. In a November 15, 2005 decision, Bankruptcy Judge John H. Squires found that PMI never received the proceeds of these two checks and that the the payments did not benefit PMI. *Pavement Maint., Inc. v. Haughey (In re Haughey)*, Case No. 04 B 02392, 2005 Bankr. LEXIS 2200 (Bankr. N.D. Ill. Nov. 15, 2005).

In conclusion, I find that PMI records demonstrate that PMI held accounts receivable totaling $293,717.40 but that MAT Leasing is entitled to an offset of $51,069.65. Therefore, the total sum of accounts receivable owed PMI is $242,647.75.

                                              ENTER:

                                              *James B. Zagel*

                                              James B. Zagel
                                              United States District Judge

DATE: March 8, 2006